UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SECURITY TITLE GUARANTEE CORPORATION OF BALTIMORE,<br><br>Plaintiff,<br><br>v.<br><br>915 DECATUR ST NW, LLC,<br><br>Defendant. | Civil Action No. 18-1128 (CKK) |

**MEMORANDUM OPINION**
(June 27, 2024)

Plaintiff The Security Title Guarantee Corporation of Baltimore ("Security Title" or "Plaintiff") filed a [1] Complaint against Defendant 915 Decatur St. NW, LLC ("Decatur" or "Defendant"), seeking a determination by the Court that Security Title has no duty to defend or indemnify Decatur, pursuant to a title insurance policy, for any underlying losses stemming from a separate lawsuit. Although Decatur initially acquired counsel and participated in this lawsuit, Decatur has remained unrepresented since January 2020, despite Court orders directing it to obtain counsel. Accordingly, Plaintiff filed a [57] Request for Entry of Default and the Clerk of the Court entered [58] Default against Decatur on March 6, 2024. Now pending before the Court is Plaintiff's [60] Motion for Default Judgment ("Motion" or "Pl.'s Mot. for Default J."). Upon consideration of Plaintiff's submissions, the attachments thereto,[1] the relevant legal authorities, and the record as a whole, the Court shall **GRANT** Plaintiff's Motion for Default Judgment.

---

[1] The Court's consideration has focused on the following documents:
- Plaintiff's Complaint ("Compl."), ECF No. 1;
- Defendant's Motion for Summary Judgment ("Def.'s Mot. Summ. J."), ECF No. 22;
- Plaintiff's Renewed Motion for Summary Judgment ("Pl.'s Renewed Mot. Summ. J."), ECF No. 54; and
- Plaintiff's Motion for Default Judgment ("Pl.'s Mot. for Default J."), ECF No. 60.

1

## I. BACKGROUND

In December 2016, Security Title provided Decatur with a title insurance policy (the "Policy") for the purchase of real property. *See* Compl. Ex. C at 1–10, ECF No. 1-3. The Policy insured Decatur's purchase of 2022 1st Street, NW, Washington, DC 20001, Lot 008, Square 3116 (the "Property") from "a woman who [Defendant's managing member] believed to be Ms. Bridget Fordham." Def.'s Mot. Summ. J. ¶¶ 4–6, 8–12,[2] ECF No. 22. The deed transferring the property was purportedly signed by Ms. Fordham and notarized as of December 7, 2016, the date of the deed. *See id*. Ex. A at 2. However, she was not present at the closing. Def.'s Mot. Summ. J. ¶ 15. Upon completing the purchase, Decatur subsequently sold the property to Claremont Management, LLC ("Claremont") the next day (December 8, 2016). *Id.* Ex. B at 1–2. Both deeds were recorded on December 15, 2016, only two minutes apart from each other. *See id.* Ex. A at 2; *id.* Ex. B at 2. The title insurance policy lists the "Date of Settlement" as December 7, 2016, and the "Date of Policy" as December 15, 2016. *See* Compl. Ex. C at 7.

In October 2017, Ms. Fordham filed suit against Decatur, Decatur's managing member Frank Olaitan, and Claremont in Superior Court of the District of Columbia for forging her name to a deed and otherwise defrauding her. *See generally* Def.'s Mot. Summ. J. Ex. F (copy of Ms. Fordham's complaint). In that suit, Ms. Fordham alleged that her signature on the deed was forged and that the conveyance to Decatur and subsequent conveyance to Claremont were fraudulent. *See id*. At the outset of that lawsuit, Decatur requested that Security Title defend against Ms. Fordham's suit on behalf of Decatur, expressing that it was required under the Policy. *See id.* Ex. I. Security Title denied this request and filed the Complaint in this case, seeking declaratory relief that Decatur was not entitled to legal defense or indemnification against Ms. Fordham's suit.

---

[2] When the Court cites to specific paragraphs in Decatur's Motion for Summary Judgment, it is citing specifically to paragraphs in the section entitled "Statement of Material Facts."

2

*See generally* Compl. Decatur filed a motion for summary judgment, seeking declaratory relief on the same matters. *See generally* Def.'s Mot. Summ. J. The Court refers the reader to its prior memorandum opinion resolving the motions for summary judgment. *See generally Sec. Title Guarantee Corp. of Balt. v. 915 Decatur St. NW, LLC*, 427 F. Supp. 3d 1 (D.D.C. 2019) (CKK). As relevant here, the Court granted summary judgment in favor of Plaintiff, holding that Plaintiff had no duty to defend Decatur in the underlying lawsuit. *Id.* at 20–21. But the Court denied without prejudice both parties' motions regarding Security Title's duty to indemnify Decatur, concluding that any such judgment would be premature because the underlying litigation with Ms. Fordham had not concluded. *Id.* at 21. Consequently, the Court stayed the matter of indemnification until the underlying litigation concluded. *See* Order, ECF No. 30. Notably, the sole remaining issue in this case is whether Security Title has a duty to indemnify Defendant's losses in the underlying lawsuit.

Of note, Decatur had been represented by counsel in earlier proceedings, however, said counsel sought leave to withdraw in December 2019. *See* Mot. to Withdraw Appearance, ECF No. 32. The Court granted counsel's motion to withdraw in January 2020. *See* Order, ECF No. 35. The Court ordered Decatur to secure new counsel, as corporate parties are required to be represented by counsel and cannot proceed *pro se*. *Id.*; 2/28/2024 Minute Order; *see also Partridge v. Am. Hosp. Mgmt. Co.* 289 F. Supp. 3d 1, 25 (D.D.C. 2017) (RC). A review of the docket reveals that Decatur has remained without counsel since January 2020.

In October 2023, Olaitan, principal of Decatur, pled guilty to violating 18 U.S.C. § 1343 (wire fraud) in a separate proceeding in the U.S. District Court for the District of Columbia. Pl.'s Status Rep. Ex. 2 at 1, ECF No. 53-2. Olaitan's Statement of Offense demonstrates that he, through his entity Decatur, committed fraud in order to obtain title to the Property. *See* Pl.'s Status

3

Rep. Ex. 1 ¶¶ 3, 9–11, ECF No. 53-1.  As a result, the Court lifted the stay on the matter of indemnification in this proceeding.  10/12/2023 Minute Order.  Security Title then filed a renewed motion for summary judgment.  *See* ECF No. 54.

But because Decatur has remained unrepresented, Security Title then filed the request for entry of default on March 5, 2024.  *See* Req. for Entry of Default, ECF No. 57.  The Clerk of the Court entered default against Defendant on March 6, 2024.  Entry of Default, ECF No. 58.  On March 28, 2024, Plaintiff filed the pending Motion for Default Judgment, requesting that the Court to enter default judgment on the duty to indemnify against Defendant.  *See* Pl.'s Mot. for Default J. ¶ 4.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 55(a) provides that the clerk of the court "must enter [a] party's default" when a "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a).  Once a default has been entered by the clerk, a court may enter default judgment against that party pursuant to Rule 55(b).  *See* Fed. R. Civ. P. 55(b).  To warrant default judgment, the defendant "must be considered a 'totally unresponsive' party, and its default plainly willful, reflected by its failure to respond to the summons and complaint, the entry of default, or the motion for default judgment." *Int'l Painters & Allied Trade Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (ESH) (citation omitted).

Default judgment is disfavored in this jurisdiction because courts prefer to resolve claims on their merits. *See Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980).  However, default judgments are available to "safeguard plaintiffs 'when the adversary process has been halted because of an essentially unresponsive party.'" *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir.

2005) (quoting *Jackson*, 636 F.2d at 836). The "determination of whether default judgment is appropriate is committed to the discretion of the trial court." *Auxier Drywall, LLC*, 531 F. Supp. 2d at 57 (citing *Jackson*, 636 F.2d at 836). Default judgment may be entered against a corporate defendant that is proceeding absent counsel, as corporate entities are not permitted to appear *pro se*. *See Motir Serv., Inc. v. Ekwuno*, 191 F. Supp. 3d 98, 107 (D.D.C. 2016) (BAH).

Upon entry of default by the clerk of the court, the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *Int'l Painters & Allied Trade Indus. Pension Fund v. R.W. Armine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002) (RMU) (citation omitted). The moving party is "entitled to all reasonable inferences from the evidence offered." *Id.* (citing *Au Bon Pain Corp. v. Artect., Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

### III. DISCUSSION

In the present case, the Clerk of the Court entered default against Defendant, and therefore the factual allegations in the Complaint are taken as true.[3] *See R.W. Amrine Drywall*, 239 F. Supp. 2d at 30. The Court finds that Plaintiff's Complaint sufficiently alleges facts to support its claim that it has no duty to indemnify Defendant's losses in the underlying suit with Ms. Fordham.

A duty of indemnification arises if the insured is liable for claims that are covered by the insurance policy. *Sherman v. Ambassador Ins.*, 670 F.2d 251, 259 (D.C. Cir. 1981) ("[I]ndemnification under the policy is not due unless the insured actually loses on, or is made liable for, claims that are covered by the policy."). As a general matter, ripeness concerns can be raised when a court makes a declaratory judgment on a duty to indemnify before there is a final

---

[3] The Court notes that the Clerk's entry of default was returned as undelivered. *See* ECF No. 61. The failure to deliver an entry of default does not preclude default judgment. *See Chanel, Inc. v. Various John Does Nos. 1-300*, No. 08-413, 2009 WL 856452, at *1 (D.D.C. Mar. 31, 2009) (RCL) (default notices returned as undelivered do not affect the court's ability to enter default as it is the party's duty to keep the court informed of any changes of address); *see also Fla. Physician's Ins. v. Ehlers*, 8 F.3d 780, 784 (11th Cir. 1993) (same); *JTH Tax, Inc. v. Geraci*, No. 2:14-cv-236, 2014 WL 4955373, at *6 (E.D. Va. Oct. 2, 2014) (same).

5

judgment in the underlying claim.[4]  *Cf. Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57 (1993) ("Injunctive and declaratory judgment remedies . . . are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy ripe for judicial resolution.") (internal quotation marks and alterations omitted) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967)); *Salus Corp. v. Cont'l Cas. Co.*, 478 A.2d 1067, 1071 (D.C. 1984) ("[P]rior to any proof of alleged wrongdoing by Salus and without any judgment by a court upon the complaints against Salus seeking punitive damages, it was premature and inappropriate for the [] court to make a pronouncement based upon a mere prayer for punitive damages and that the appellee-insurers, as a matter of public policy, were relieved from indemnifying Salus for any punitive damage awards arising out of the law suits."). While ripeness was a concern in the Court's prior opinion, *Sec. Title*, 427 F. Supp. 3d at 27, this concern is no longer applicable as explained below.

Although Decatur has not been found liable in the underlying claim in the Superior Court case, Decatur's principal, Frank Olaitan, was indicted and has since pled guilty to committing fraud in the transaction at issue in the Superior Court case.[5]  *See* Plea Agreement, *United States v. Olaitan*, 21-cr-713 (D.D.C. Aug. 15, 2023), ECF No. 54; *see also* Pl.'s Renewed Mot. Summ. J., Ex. 1, ECF No. 54-3.  Specifically, Olaitan admitted to "fraudulently us[ing] his corporate entity, 915 Decatur, to purport to purchase the First Street property from the true owner [] and to re-sell the property thereafter to Company 1—all without [the true owner's] knowledge or consent." Pl.'s

---

[4] The Court originally addressed these concerns in its Amended Memorandum Opinion and refers the reader to its previous legal analysis.  *See Sec. Title Guarantee Corp. of Balt. v. 915 Decatur St NW, LLC*, 427 F. Supp. 3d 1, 19–20 (D.D.C. 2019) (CKK).

[5] Decatur is bound by the fraudulent actions of Olaitan because Olaitan acted with Decatur's actual authority when signing the deed to the Property on behalf of Decatur.  Compl. Ex. D at 2; *see Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi Ltd.*, 15 F. Supp. 2d 1, 7 (D.D.C. 1997) (CKK) ("The law is clear that a corporation is bound by the acts of its officers so long as they act with either actual or apparent authority."), *aff'd*, 159 F.3d 636 (D.C. Cir. 1998).

6

Renewed Mot. Sum. J., Ex. 1 at ¶ 6, ECF No. 54-3.  Olaitan's guilty plea collaterally estops him from relitigating issues essential to his conviction, including the allegations of fraud in the underlying Superior Court case.  *See Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568–69 (1951) (holding prior criminal convictions estop questions in civil matter "directly determined" in the criminal prosecution); *Alsco-Harvard Fraud Litig.*, 523 F. Supp. 790, 804 (D.D.C. 1981) (LFO) (estopping defendants from relitigating issues of liability in civil claim related to guilty pleas in criminal case).  In light of Olaitan's guilty plea and its application to this case, the Court may now proceed with resolving the remaining issue: the duty to indemnify.

The Court concludes that Plaintiff has produced sufficient evidence that it has no duty to indemnify Defendant's losses in the underlying litigation because Defendant's intentional and fraudulent conduct are not covered by the Policy.  Insurance policies are construed according to contract principles and are therefore generally interpreted "in a manner consistent with ordinary speech," without the necessity of extrinsic evidence.  *Stevens v. United Gen. Title Ins.*, 801 A.2d 61, 66 (D.C. 2002).  The Policy here expressly provides that coverage is not required for, *inter alia*, "[d]efects, liens, encumbrances, adverse claims, or other matters . . . created, suffered assumed, or agreed to by the Insured Claimant[.]"  Compl. Ex. C at 2.  The language "created . . . by the insured claimant" has generally "been defined to reflect conscious and deliberate or intentional conduct."  *Stevens*, 801 A.2d at 69 (citations omitted).  Olaitan's guilty plea of violating 18 U.S.C. § 1343 (wire fraud) demonstrates that his conduct was deliberate and intentional, as the statute requires the offender to knowingly and willingly enter into a scheme to defraud.  *See United States v. Alston-Graves*, 435 F.3d 331, 337 (D.C. Cir. 2006) ("The elements of [18 U.S.C. § 1343] [are] *knowingly and willingly* enter[ing] into a scheme to defraud . . . .") (emphasis added).  Given the Policy's exception that coverage is not provided for matters created

7

by the insured's intentional and deliberate conduct, this intentional conduct relieves Plaintiff of any duty to indemnify Defendant's losses in the underlying litigation. *See Stevens*, 801 A.2d at 69.

In sum, the Court finds that Plaintiff does not have a duty to indemnify Defendant's losses in the underlying litigation, as the claims are not covered by the Policy. Accordingly, default judgment pursuant to Federal Rule of Civil Procedure 55(b) is warranted.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has met all necessary preconditions to obtain a default judgment against Defendant and that a default judgment is appropriate on this record. The Court therefore **GRANTS** Plaintiff's [60] Motion for Default Judgment and enters default judgment against Defendant Decatur. An appropriate order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge